[Civil No. 2806.  Filed January 28, 1929.]

[274 Pac. 173.]

E. J. F. HORNE, Administrator of the Estate of MOLLIE POTTS KENNEDY, Deceased, and H. A. DAMERON, Petitioners, v. ROSS H. BLAKELY, Judge of the Superior Court, Exercising Probate Jurisdiction in the Superior Court of Yavapai County, Arizona, in the Matter of the Estate of MOLLIE POTTS KENNEDY, Deceased. Petition of REBECCA SNOW, Therein, Respondent.

See Courts, 15 C. J., sec. 428, p. 1017, n. 10.

Mr. Ziba O. Brown and Messrs. Favour & Baker, for Petitioners.

Messrs. O'Sullivan & Morgan, for Respondent.

LOCKWOOD, C. J.—On April 21, 1928, E. J. F. Horne was appointed by the superior court of Yavapai county as administrator of the estate of Mollie Potts Kennedy, deceased, and duly qualified as such. In the petition for letters certain real estate, the subject matter of this proceeding, was listed as the separate property of the deceased, and Charles Kennedy, her husband, was named as the sole heir at law. July 2, 1928, Rebecca Snow filed a petition in the superior court of Yavapai county, entitled as follows: ''In the Matter of the Estate of Mollie Potts Kennedy, Deceased; E. J. F. Horne, Administrator. Petition of Rebecca Snow, Surviving Mother of Mollie Potts Kennedy, Deceased.'' In said petition she set up in substance that she was the surviving mother of the deceased; that the latter left

no living children; that her heirs at law were the petitioner, one full brother, one half-brother, and two half-sisters; that Horne had been appointed as administrator, and had listed certain real estate as the separate property of the deceased, claiming all of it for Charles Kennedy, her husband, as her sole heir. The petitioner further alleged that the property so claimed as a matter of fact belonged to her (Rebecca Snow) by virtue of a certain warranty deed from the deceased to petitioner, executed on July 18, 1913, but not recorded during the lifetime of the former, and that one H. A. Dameron had an escrow agreement for the purchase of said property, made with the deceased before her death. The prayer of the petition was that letters of administration theretofore issued to Horne be set aside, and that Dameron, as escrow-holder, account for and pay to the petitioner all the moneys due on said agreement.

A citation was duly issued and served on Horne and Dameron by mail, and not in the manner in which an ordinary summons is required to be served. Dameron answered it, setting up his purchase of the property under the escrow agreement, alleging that he had no knowledge or information of the alleged deed from Mrs. Kennedy to Mrs. Snow, and praying that the latter's interest, if any, by reason of the deed, be held inferior to his interest by virtue of the escrow, except as to the moneys still due. Horne, the administrator, answered, denying the allegations of the petition to the effect that Mrs. Snow had an interest in the real estate, and asking that Dameron be held to account to him as administrator for the payment due under the escrow agreement. All these papers were entitled "In the Matter of the Estate of Mollie Potts Kennedy, Deceased; E. J. F. Horne, Administrator," as were, indeed, all pleadings, orders,

and judgments of every nature during the entire proceedings.

Thereafter Horne filed an amended answer, setting up as a defense to the claim of title by Mrs. Snow the statute of limitations, and an estoppel by reason of knowledge of the Dameron escrow and of another previous sale of the property. Dameron also filed an amended answer, which was in effect an interpleader between Mrs. Snow and Horne as to the amount still due under the escrow, and also a plea of the statute of limitations. Mrs. Snow then filed an amended petition, setting up in substance that she and her husband, J. C. Snow, were originally the owners of the property in question; that they had deeded it to Mrs. Kennedy, then Mollie Potts in 1913, in pursuance of a contract which provided in substance that she should support her mother and stepfather during their lifetime, and if they predeceased her, the property should belong to her absolutely, but, if she died before they did, it should return to them, and that Charles Kennedy, who married the deceased after the making of the contract and deeds, had full knowledge at all times of these facts. There were various motions to strike and to make more definite and certain, and a general demurrer interposed, but nowhere in the pleadings was the specific objection set forth that the court was sitting in probate and did not have jurisdiction of the subject matter. The issues were heard on the merits before the court sitting without a jury, and a judgment was rendered on November 27th, 1928. The attorneys for Dameron and Horne objected to the form thereof, and such form was, in part, at least, corrected by the trial judge. Thereafter Dameron and Horne filed in this court a petition for a writ of *certiorari,* alleging that the court had no jurisdiction of the subject matter in the proceedings between Mrs. Snow, Horne, and Dameron as above set forth.

Briefly stated, the grounds on which the petition for *certiorari* is founded are as follows: The original proceeding was in probate in the administration of the estate of Mollie Potts Kennedy, deceased. Rebecca Snow claimed no interest in said estate by virtue of heirship; her sole contention being that the property in controversy and listed as part of the estate belonged to her by virtue of purchase instead of to Kennedy by descent. In other words, she was, legally speaking, a stranger to the estate, making an adverse claim to property listed as a part thereof. It is contended by petitioners herein that the superior court, sitting in probate, has no jurisdiction to determine the title to realty as between the estate and a third party, but that the same must be settled by proceedings on the law or equity side of the court.

It is unquestionably the rule of law in this state that the superior court, in the exercise of probate jurisdiction, has no jurisdiction whatever to try or to determine a claim of title to property, listed as part of the estate, made by a stranger thereto. The precise question has been before us in the case of *Estate of Tamer*, 20 Ariz. 232, 179 Pac. 644. Therein we stated:

"Aside from that, we are unable to find any law in our statutes authorizing the superior court, while exercising probate jurisdiction, to entertain a petition from a stranger asking that certain of the assets of the estate of the deceased person be turned over to her, and certainly there is no authority in law empowering the superior court, while acting in matters of probate, to make the order we are considering. If part of the inventoried and appraised assets of an estate of a deceased person is claimed by a stranger or third person as his, the jurisdiction to try and determine his rights is not in the probate court, but in the superior court exercising law and equity powers. . . . That the superior court acting in a probate matter, was without power or jurisdiction to

enter the judgment appealed from, there seems no doubt. In *Caron* v. *Old Reliable Gold Mines Co.*, 12 N. M. 211, 6 Ann. Cas. 874, and note, 78 Pac. 63, the court said: 'We have carefully gone over the cases cited by appellees in their briefs and find none that support the proposition that a probate court has jurisdiction to adjudicate title to property, real, personal, or mixed, between the estate and a stranger to the estate; nor have we found a case elsewhere that so holds.' As to the question that 'probate courts have no jurisdiction to settle questions of title to property between estates and third parties, the number of cases squarely supporting this proposition is limited only by the number of cases deciding the question.' The proceeding had in this case is unknown to the laws of this state, and the judgment entered is not one from which, under the statute, an appeal may be prosecuted even if appellants were shown to be aggrieved or proper parties to the proceeding.''

It is true that in the Tamer case, when the claim to the property in the possession of the administrator was made by the third party, the proceedings were somewhat informal. The judgment, nevertheless, did attempt to quiet the title to the property in the third person, just as does the judgment complained of herein. Some two years later a somewhat similar question came before us. *In the Matter of the Estate of Baxter,* 22 Ariz. 91, 194 Pac. 333. Therein it was attempted to try in probate an action for partnership accounting between the administrator of a deceased partner and his surviving partner. The whole matter was bitterly contested, and a judgment was finally rendered. When the matter came before us on appeal we stated:

''As to the second item, although it was a trust fund and not a part of the Baxter estate, we think Irish, at his option, might have regarded Baxter's and the personal representative's conduct in connection therewith as a conversion of the funds, and filed

a claim against the estate as for debt, and upon its disallowance brought a civil action in the proper court to establish his claim, or he could have instituted a suit on the equity side of the court for the purpose of having the personal representative declared his trustee of that particular fund, in which case there would have been no occasion formally to present it as a claim against the estate. He did neither of these things. What he did was to invoke the probate side of the court to take jurisdiction of and settle what he claimed was a partnership accounting. Had the facts disclosed the existence of a partnership as he contended, the statute plainly states that 'the surviving partner has the right to continue in possession of the partnership and to settle its business,' accounting to the administrator of the decedent's estate. . . .

"The law is well settled that the superior court, exercising probate jurisdiction, cannot entertain an action for partnership accounting. . . . For the reasons above suggested, the administrator appellant has made the point that the probate court had no jurisdiction of the subject-matter in dispute, and therefore was without power to hear and determine the questions involved, and that his order directing the administrator to pay Irish what was found due him was void. This question was not presented to the lower court, and was not passed upon by the learned trial judge. It was first presented here, and if it were possible to waive the question of jurisdiction, it was done by all the parties acquiescing in the proceedings had. As the question of the court's jurisdiction may be raised at any time, we have no choice except to pass upon it. We are satisfied that the whole proceeding was without the jurisdiction of the probate court, and so hold. This leaves the questions involved open to litigation in a proper forum as though they had never been tried in this proceeding."

We reaffirm the general doctrine laid down in these two cases. A third party cannot litigate the ownership of property listed as part of the estate in the probate proceedings. He must proceed by a suit at law or in equity. Indeed, so well is this rule

settled that respondent does not contest it. His claim is rather that the proceeding, although formally in probate, was as a matter of substance in equity, and he contends that this court should disregard the form and look to the substance of the matter, and declare it to be an equitable suit to quiet title, notwithstanding its form. In support of his position he cites article 6, section 22, of the Constitution, and the cases of *In re Thompson's Estate,* 101 Cal. 349, 35 Pac. 991, 36 Pac. 98, 508; *In re Clary's Estate,* 112 Cal. 292, 44 Pac. 569; *In re De Leon's Estate,* 102 Cal. 537, 36 Pac. 864; *In re Beisel's Estate,* 110 Cal. 267, 40 Pac. 961, 42 Pac. 819; *In re Wells' Estate,* 140 Cal. 349, 73 Pac. 1065; *Alison* v. *Goldtree,* 117 Cal. 545, 49 Pac. 571.

The rule laid down by all of these cases is based substantially on the reasoning set forth by the court in the Thompson case, *supra,* as follows:

"It is contended by the appellant that the superior court, sitting in probate in the estate of Thompson, deceased, had no jurisdiction of the matter of the settlement of the account of the trustees, and, technically speaking, this is true. The will of Thompson had been probated and the estate distributed and delivered up to the distributees. The executors had been discharged in the probate court fifteen years before this petition was filed. Goldtree's powers came through an order of the superior court in equity, but, while it is true that the probate and equity jurisdictions of the superior court are separate and distinct, that the former furnishes a method of administering the affairs of a decedent, and, when final distribution has been had, its jurisdiction is exhausted, and it is peculiarly for a court of equity to appoint and control trustees in the management of trust estates, yet, under our system, the same tribunal exercises equity and probate jurisdiction. The appellant made no objection to the form of the petition. The court had jurisdiction of the subject-matter, and the objection is raised, for the first time

in this court, that the court did not have jurisdiction of the person, which, of course, was waived by the appearance of the defendant without objection. *The petition under these circumstances may be regarded as a bill in equity addressed to the equitable powers of the superior court, and the form of its title is immaterial.*" (Italics ours.)

If, as a matter of fact in this case, it appeared to us from the whole record that the parties, including the court, had regarded the proceeding as a suit in equity and had inadvertently used some of the forms required in probate proceedings, the point made by respondent would be well taken. This court has always been disposed to disregard form in favor of substance, and is reluctant to reverse even criminal cases for technical error. *Hobson* v. *N. M. & A. R. Co.,* 2 Ariz. 171, 11 Pac. 545; *Garver* v. *Thoman,* 15 Ariz. 38, 135 Pac. 724; *Arizona Eastern R. R. Co.* v. *Bryan,* 18 Ariz. 106, 157 Pac. 376; *Lawrence* v. *State,* 29 Ariz. 247, 240 Pac. 863; *Sam* v. *State,* 33 Ariz. 383, 265 Pac. 609.

There is, however, a limit beyond which we cannot go. We have examined the entire record certified to us in this proceeding, and are satisfied therefrom that this is not a case wherein the parties tried the issues on the theory that it was a suit in equity, and inadvertently used probate forms, but, on the contrary, that it was the belief of the trial judge and of petitioner, at least, if not of the administrator and of the escrow-holder, that the superior court, sitting in probate had jurisdiction to determine the whole matter. The original petition of Mrs. Snow requested that the administrator be discharged, an order which obviously could be made only in probate. The judgment of the court, among other things, did set aside such letters. This was inconsistent with the theory that the proceeding was tried as an independent suit in

equity. An affirmance of the judgment would necessitate either an express reversal of the Tamer and Baxter cases, or a substantial nullification of their doctrine, by holding that, notwithstanding the trial court and the parties endeavored to litigate the title in the probate proceedings, and believed they had done so, both in substance and in form, nevertheless we would consider that, because the proceeding *should* have been tried in equity, it *was* so tried. Such a decision, carried to its logical conclusion, would mean the abolition of all rules of pleading and practice, and require an affirmance of every judgment where this court was satisfied with the ultimate result, no matter how reached. We are not willing to extend the doctrine of harmless error so far.

The judgment of the superior court of Yavapai county is annulled as void, and the matter remanded, with instructions to dismiss the petition in probate for lack of jurisdiction to entertain it.

McALISTER and ROSS, JJ., concur.